**E-FILED**
Wednesday, 14 April, 2010  11:44:53 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

JOSEPH RITCHIE,                )
                              )
      Petitioner,           )
                              )
      v.                     )      Case No. 09-1006
                              )
KEVIN GILSON, Warden,         )
                              )
      Respondent.            )

## O R D E R

Now before the Court is Petitioner, Joseph Ritchie's ("Ritchie"), Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Petition [#1] is DENIED.

## FACTUAL BACKGROUND

Ritchie was charged with committing criminal sexual assault against his 14-year-old sister-in-law. Following closing arguments on the second day of trial, the jury deliberated for about five hours before asking to go home for the night. The jury returned the next morning and deliberated for about 40 minutes before returning a guilty verdict on September 29, 2005. Ritchie was subsequently sentenced to 66 months' imprisonment.

In reviewing the record on appeal, appellate counsel found a single sheet of paper in an envelope of jury notes that contained a discussion of the meaning of "reasonable doubt." There was no explanation for the presence of the document. On appeal to the Illinois Appellate Court, Ritchie argued that he had not received a fair trial based on the

presence of the document and requested a remand.  The Appellate Court granted the requested remand, but retained jurisdiction over the appeal.

On remand, the jurors from Ritchie's trial were subpoenaed to determine the origin of the "reasonable doubt" document and its impact, if any, on the trial.  During the hearing, the jury foreperson testified that he "may have" researched the meaning of "reasonable doubt" on the internet the night before the jury reached its verdict and brought the document into the second day of jury deliberations the next morning.  He further stated that the jurors had discussed the meaning of "reasonable doubt," that he had read parts of the document to the jurors that morning, and that there might have been some very little further discussion of "reasonable doubt."  The majority of jurors did not recall having seen or discussing the document.  People v. Ritchie, Order at 9, No. 3-05-0879 (Ill.App.3rd Dist. June 16, 2008).[1]  The few remaining jurors recalled seeing a similar document on the table in the jury room and having part of it read to them.  Id.  The trial court determined that the document had been brought in by a juror and that part of it was read to at least some of the jury.  Id. However, the trial judge concluded that the document's presence in the jury room had not prejudiced Ritchie.

On appeal, Ritchie argued that he was denied a fair trial because: (1) the "reasonable doubt" document improperly influenced the jury; (2) the court erroneously admitted testimony regarding a telephone conversation on the night of the incident during

---

[1] Parenthetically, the Court notes that the number of jurors that either recalled having seen/heard about the document and the number of jurors denying any recollection of it vary slightly from the 11/8/07 Order of the trial court to the 6/16/08 Order of the Appellate Court.  In either instance, though, the number of jurors denying having seen or heard about the document is far greater.

which he asked his wife to have sex with him when he got home; and (3) the prosecutor made improper and inflammatory statements during opening and closing arguments.  On June 17, 2008, the Appellate Court affirmed his conviction and sentence.  His subsequent Petition for Leave to Appeal to the Illinois Supreme Court was denied.  Ritchie did not pursue post-conviction relief.

Ritchie next filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging: (1) the juror's exposure to the "reasonable doubt" document was prejudicial and violated his Sixth and Fourteenth Amendment rights; (2) the admission of evidence regarding his phone conversation with his wife on the night of the incident denied him a fair trial; and (3) the prosecutor's improper comments during opening and closing arguments violated his right to Due Process.  The petition is fully briefed, and this Order follows.

**DISCUSSION**

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, a district court must consider "whether the petitioner exhausted all available state remedies and whether the petitioner raised all his federal claims during the course of the state proceedings."  Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991), *quoting* Henderson v. Thieret, 859 F.2d 492, 496 (7th Cir. 1988).  If the answer to either of these questions is "no," then the failure to exhaust state remedies or procedural default bars the petition.  Id.  In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail.  Bocian v. Godinez, 101 F.3d 465, 468-69 (7th Cir. 1996).

Exhaustion of a federal claim occurs when it has been presented to the highest state court for a ruling on the merits or when it could not be brought in state court because a remedy no longer exists when the federal petition is filed.  Id.  In the present case, Respondent does not argue that Petitioner has failed to exhaust his state remedies.

Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal petition is filed, be presented to the state court.  Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1992).  This occurs in one of two ways.  First, a procedural default may occur when a petitioner fails to pursue each appeal required by state law, Jenkins v. Gramley, 8 F.3d 505, 507-08 (7th Cir. 1993), or when he did not assert the claim raised in the federal habeas petition in the state court system.  Resnover, 965 F.2d at 1458-59.  The second way in which a petitioner may procedurally default a claim is when a state court disposes of the case on an independent and adequate state law ground, regardless of whether that ground is substantive or procedural.  Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2553-55 (1991).

Federal review is barred for claims that are procedurally defaulted unless the petitioner can demonstrate cause and prejudice.  Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 1572-73 (1982); Farrell, 939 F.2d at 411.  Review in federal court is also possible if a fundamental miscarriage of justice would otherwise occur in that a constitutional error probably resulted in the conviction of someone who is actually innocent.  Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 864-67 (1995).

## I.      Juror Exposure to "Reasonable Doubt" Document

Ritchie first argues that the jury's exposure to the paper containing the lengthy and partially inaccurate discussion of the meaning of reasonable doubt violated his Sixth and

Fourteenth Amendment rights.  Following the evidentiary hearing on remand, the trial court found that only two of the jurors had even a remote or vague recollection of seeing or reviewing the document, and the foreperson had a more specific recollection of reading portions of it to some or all of the jurors.  People v. Ritchie, Order at 2, Case No. 04-CF-845 (Cir. Ct. Tazewell County, November 8, 2007).  Based on the evidence, the trial court concluded that a juror had created the document from internet research, brought it into the deliberation room, and read part of the document to some or all of the other jurors.  Id.  In concluding that Ritchie had not been prejudiced by this occurrence, the trial court noted that "there was no direct evidence that the document in any way assisted any one juror in the formulation of his or her verdict" and that the mere fact that it was introduced into the deliberations did not, ipso facto, constitute prejudice.  Id., *citing* People v. Taylor, 166 Ill.2d 414 (Ill. 1995).  The trial court then cited People v. Majka, 365 Ill.App.3d 362 (2nd Dist. 2006), for the proposition that, "If the definition does not mislead the jury, it does not make the trial unfair."

The trial court acknowledged that under Illinois law, no definition of reasonable doubt is to be given to the jury.  Id., at 3.  While there was no case exactly on point, other cases from Illinois and other jurisdictions where a jury had been instructed erroneously or otherwise by either the court or counsel found that the instruction had not resulted in findings of prejudice.  Id., at 3-4.  The trial court then concluded that almost all of the paragraphs in the reasonable doubt document were either lifted or copied directly from language approved in other jurisdictions for defining the term.  Id., at 4.  From this, the trial court reasoned that "[t]he fact that other jurisdictions in criminal cases present in some

cases similar language to jurors, however, is persuasive to this Court that no prejudice occurred herein." Id., at 5.

In addressing this issue on direct appeal, the Illinois Appellate Court noted that neither side had presented a factually analogous case. People v. Ritchie, Order at 10, No. 3-05-0879 (Ill.App.3rd Dist. June 16, 2008). The Appellate Court acknowledged that while it is well settled that it is improper in this state to attempt to define "reasonable doubt" in any manner, it is not necessarily reversible error. Id. The court discussed People v. Wallace, 279 Ill.139 (Ill. 1917), in which the Illinois Supreme Court found that the effect of giving the jury five lengthy instructions discussing reasonable doubt could only have been to suggest to the jury that "there was a grave fear that the jury would think there was a reasonable doubt of defendant's guilty when there was none." Id., at 10-11. In People v. Klein, 305 Ill. 141 (Ill. 1922), the Illinois Supreme Court found no reversible error where a long, involved instruction had been given telling the jury that it was incumbent upon the state to prove the defendant guilty beyond all reasonable doubt, as there was no showing that when taken in context of the instructions as a whole, there could have been any confusion as to the proof necessary. Similarly, where instructions advised the jury that the burden of proof "is not intended to aid anyone who is in fact guilty of crime to escape, but is a humane provision of the law intended, as far as human agencies can, to prevent an innocent person from being convicted," and "the doubt to acquit the defendant must be a reasonable doubt," the Illinois Supreme Court found that the error was not reversible but cautioned that the practice of attempting to define the term should be discontinued. However, in People v. Cagle, 41 Ill.2d 528 (Ill. 1969), the Supreme Court found reversible

error where an instruction gave an elaborate definition of reasonable doubt that "implied that the law requires that an acquittal be justified."

Thus, the Appellate Court determined that the issue was not whether the document should not have been considered in deliberations, but rather whether its consideration improperly prejudiced the jury. Id., at 11. Citing People v. Lamon, 346 Ill.App.3d 1082, 1092 (3rd Dist. 2004), the court stated defendant's burden in demonstrating prejudice as needing to "establish that the extraneous information was prejudicial, a juror was exposed to the prejudicial information, and the juror's decision was influenced by the information." Id. In other words, the court must determine whether the jurors' exposure to the extraneous information created "such a probability that prejudice will result that it is deemed inherently lacking in due process." Id., at 12, citing Estes v. Texas, 381 U.S. 432, 542-43 (1965).

In light of this precedent, the Appellate Court agreed that Ritchie had the burden of producing evidence of probable prejudice and that the trial court's determination that prejudice was not established would be entitled to deference unless shown to be manifestly erroneous. Id. In fact, the error would be harmless absent a showing that the definitions contained in the document "contradict, nullify or negate the court's jury instructions." Id., at 13, citing Pietrzak v. Rush-Presbyterian-St. Luke's Medical Center, 284 Ill.App.3d 244, 251 (1st Dist. 1996). The Appellate Court found that in this case, the extraneous information was not inherently prejudicial, as it was similar to language found to be acceptable in other jurisdictions. Id. Additionally, language in the document indicating that "reasonable doubt" meant "you better be damned sure" combined with other phraseology would have actually been more helpful to Ritchie than prejudicial. Id. This in conjunction

- 7 -

with the testimony of the jurors that only three of them had any recollection of the document at all while the others did not recall seeing or hearing about the document during deliberations, was found to establish that the trial court's determination that the jury had not been prejudiced by the information was not manifestly erroneous.  Id.

Ritchie argues that the Illinois Appellate Court's opinion was not reasonable in light of clearly established Supreme Court precedent.  Specifically, he cites Cage v. Louisiana, 111 S.Ct. 328 (1990), and Victor v. Nebraska, 114 S.Ct. 1239 (1994), for the proposition that jury instructions regarding reasonable doubt amounted to Constitutional error.  In Cage, the Supreme Court found that a jury instruction that equated reasonable doubt with a "grave uncertainty," an "actual substantial doubt," and "moral certainty" that defendant was guilty could have caused a reasonable juror to interpret the instruction "to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." 111 S.Ct. at 329-330.  In Estelle v. McGuire, 502 U.S. 62, 72 (1991),  the Supreme Court partially overruled Cage in clarifying "that the proper inquiry is not whether the instruction 'could have' been applied unconstitutionally, but whether there is a reasonable likelihood that the jury did so apply it."

In Victor, two cases were joined for consideration.  In one case, the jury for Defendant Sandoval received the following instruction:

> A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty.  This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.

> Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible

> or imaginary doubt.  It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

114 S.Ct. at 1244.  The Supreme Court found the reference to "moral evidence" to be unproblematic and that an instruction casting the government's burden of proof in terms of an abiding conviction as to guilt, without referring to moral certainty, "correctly states the government's burden of proof."  Id., at 1247.  When taken in context, "moral certainty" language was found to adequately "impress . . . upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused."  Id., *citing* Jackson v. Virginia, 443 U.S. 307, 315 (1979).  The Supreme Court held that the instruction informed the jury that their decision had to be based on the evidence in the case and, when taken as a whole, it was not reasonably likely for the jury to have understood the instruction as suggesting a standard of proof lower than required by due process.  Id.  Finally, the defendant's objection to the inclusion of the phrase "not a mere possible doubt" based on Cage was rejected, as that portion of the instruction was not found to be problematic.  Id., at 1248-49.

With respect to Defendant Victor, the jury was instructed:

> "Reasonable doubt" is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon.  It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, to a moral certainty, of the guilt of the accused. At the same time, absolute or mathematical certainty is not required.  You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken.  You may find an accused

- 9 -

guilty upon the strong probabilities of the case, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable.  A reasonable doubt is an actual and substantial doubt reasonably arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

Id., at 1249.

Victor argued that equating reasonable doubt with "substantial doubt" overstated the degree of doubt necessary for an acquittal.  While the Supreme Court agreed that this construction was somewhat problematic, "[a]ny ambiguity, however, is removed by reading the phrase in the context of the sentence in which it appears," distinguishing substantial doubt from fanciful conjecture.  Id., at 1250.  Where "substantial" is used in the sense of the existence of doubt rather than quantifying the magnitude of doubt, the concern is not present.  Id.  Furthermore, the instruction contained an alternative definition of reasonable doubt referring to "a doubt that would cause a reasonable person to hesitate to act," which is a formulation of the standard that "gives a common sense benchmark for just how substantial such a doubt must be" and has been repeatedly approved.  Id.  Accordingly, the Supreme Court concluded that it was not "reasonably likely that the jury would have interpreted this instruction to indicate that the doubt must be anything other than a reasonable one."  Id.

The reference to "moral certainty" was found to be unproblematic for the same reasons as the instruction given in Sandoval's case.  Id., at 1250-51.  The inclusion of the phrase "strong probabilities" in the instruction was also upheld, with the Supreme Court noting that the phrase appeared in the same sentence as information directing that the

probabilities must be strong enough to prove the defendant's guilt beyond a reasonable doubt.  Id., at 1251, *citing* Dunbar v. United States, 156 U.S. 185, 199 (1895).  After noting that Due Process requires proof of a defendant's guilt beyond a reasonable doubt and that trial courts avoid defining reasonable doubt in such a way as to lead the jury to convict on a lesser showing than required by due process, the Supreme Court held that "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury" and that there was "no reasonable likelihood that the jurors who determined petitioners' guilt applied the instructions in a way that violated the Constitution."  Id.

In Ritchie's case, the document found among the jury materials stated:

> REASONABLE DOUBT - The level of certainty a juror must have to find a defendant guilty of a crime.  A real doubt, based upon reason and common sense after careful and impartial consideration of all the evidence, or lack of evidence, in a case.
>
> Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.  However, it does not mean an absolute certainty.
>
> Adj.  Part of jury instructions in all criminal cases is to find the defendant guilty only if they are certain "beyond a reasonable doubt."  The highest level of proof required to win a case.  It is intended to be a more rigorous standard than preponderance of the evidence.  Although the phrase's full meaning is uncertain, it is best described as "you better be damned sure." It is used as a test to give judgment to a plaintiff during a non-criminal case.
>
> The law presumes the defendant to be innocent of crime. Thus the defendant, although accused, begins the trial with a "clean slate" – with no evidence against him/her.  And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a

reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

It is not required that the state prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense – the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it.

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.

People v. Ritchie, Order at 7-9, No. 3-05-0879 (Ill.App.3rd Dist. June 16, 2008).

After considering Cage, as modified by Estelle, and Victor, it is apparent that the language contained in the document brought into the jury room by the juror during deliberations in Ritchie's trial passes constitutional muster. Although it is well-settled that reasonable doubt is not to be defined in Illinois, the record reveals that the term was not defined by either counsel or the court. Rather, it was brought into the deliberations by one of the jurors. Consideration of the document was clearly inappropriate, and it is somewhat disturbing to read testimony from at least one juror indicating that they were never told that they should not do their own research into the case or bring anything like the reasonable doubt document into their deliberations.

That being said, the Court agrees with the state courts that the definitions contained within the document are largely reflective of definitions/explanations that have been approved in the caselaw. The portion of the first paragraph addressing that the doubt must be real and based upon reason, common sense, and careful consideration of the evidence is similar to the second paragraph of the instruction given to Defendant Sandoval's jury in Victor, which addressed the need to consider the evidence and that the doubt could not

be a mere possible doubt.  It is also similar to the actual and substantial doubt arising from the evidence portion of the instruction given to Defendant Victor's jury in that same case. Both of these instructions, when considered in context, were found to correctly convey the concept of reasonable doubt to the jury and pose no reasonable likelihood of being applied in a way that violated the Constitution.

The second and fifth paragraphs of the document at issue here track the concepts of not requiring absolute certainty and proof that would cause a reasonable person to hesitate to act approved in <u>Victor</u>.  Paragraph three correctly identifies "beyond a reasonable doubt" as the highest burden of proof required in a case and a more rigorous standard than a preponderance of the evidence.  While the phrase describing the concept as "you better be damned sure" has not to the Court's knowledge been specifically approved in Supreme Court caselaw, it certainly would not lend itself to a reasonable construction requiring a lesser showing than that required by Due Process.[2]

The fourth paragraph is a restatement of the presumption of innocence and reinforcement of the concept that the jury's decision must be based on careful and impartial consideration of the evidence presented in the case.  There is no attempt to define reasonable doubt, and reflects the essence of the first portion of the instruction given to Defendant Sandoval's jury in <u>Victor</u>.  Finally, the last paragraph reminds jurors that a defendant cannot be convicted on mere suspicion or conjecture, which reflects the

_____

[2] The last sentence of the third paragraph is rather ambiguous, containing an unclear antecedent that makes it difficult to determine which of the prior sentences was being referred to and making reference to the test for judgment used in a non-criminal case.  However, the third sentence of the paragraph advises that reasonable doubt is a more rigorous standard than preponderance of the evidence, which is the burden of proof in civil cases.

admonition in the instruction to Defendant Victor's jury that mere possibility, imagination, or fanciful conjecture were insufficient.

Accordingly, the Court cannot conclude that the document made known to some of the jurors in this case, when taken in context, would have led a reasonable jury to convict on a lesser showing than that required by Due Process.  Even if one statement taken in isolation could have been considered misleading, the totality of the document  repeatedly highlighted the presumption of innocence, directed the jury's focus to careful and impartial consideration of the evidence in the case, and explained the parameters of the reasonable doubt standard in terms that have been found to satisfy Due Process.   In fact, under the Supreme Court caselaw discussed above, when taken as a whole, the document could be said to have correctly conveyed the concept of reasonable doubt to the jury and posed "no reasonable likelihood that the jurors who determined [Ritchie's] guilt applied [it] in a way that violated the Constitution." Victor, 511 U.S. at 22-23.  The state courts therefore did not unreasonably apply or reach a result opposite that reached by the Supreme Court on a materially indistinguishable set of facts, and Ritchie has failed to show that he is entitled to relief by showing that the decision in his case was contrary to clearly established Supreme Court precedent.

Ritchie further argues that the state courts unreasonably held that the jury was not misled to convict him on a standard less stringent than proof beyond a reasonable doubt. In support of this argument, he cites the testimony of several jurors that they remembered discussions of what "reasonable doubt" meant during deliberations.  One juror testified that everyone was "kind of hung up" on the definition of beyond a reasonable doubt.  Another

juror testified that he thought a document helped the jurors resolve the issue of reasonable doubt.

For the reasons discussed above, the Court rejects his contention that the jury was misled to convict him on a standard less stringent than proof beyond a reasonable doubt. Extraneous influences on the jury have been found to warrant relief where: (1) jurors receive information that was not relayed during trial and bears on a material issue of fact, and (2) jurors have contact with outside parties that might undermine their impartiality. Remmer v. United States, 347 U.S. 227 (1954); Parker v. Gladden, 385 U.S. 363 (1966). The Supreme Court has not held that consultation of extraneous materials by a jury to determine the meaning of reasonable doubt violates the Constitution, and the situation does not logically fit within either category.

In any event, assuming that the presence of extraneous materials of the nature at issue here was actionable, to obtain relief Ritchie must show prejudice by demonstrating that "the extrinsic material had a substantial and injurious effect on [the] verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). Based on the testimony of the jurors and the state court's factual finding that any exposure to the document did not impact their verdict, Ritchie cannot meet this standard.

Specifically, Juror Spinder recalled discussing "reasonable doubt" during deliberations, but did not recall any confusion or difference of opinion as to the meaning of the term and did not recall having seen or heard about the extraneous document. (Transcript of 9/14/07 Evidentiary Hearing at 5-7) Juror Dean testified that they asked to see the actual meaning of the term "reasonable doubt" and thinks that they received something from the court; she does not recall if the document at issue was what they

received during the trial. Id., at 12-14.  Juror Flynn stated the he did not recall any problem with the definition of the term "reasonable doubt," could not remember if the issue came up, and did not recognize the document in question.  Id., at 17-19.  Juror Kraus remembered the issue of whether there was "reasonable doubt" being discussed, but did not recall any juror having a problem with understanding the concept; she recognized the document being similar to one she recalled from deliberations.  Id., at 21-24.  Juror Desantis did not remember whether any jurors had questions about the meaning of "reasonable doubt" or whether any juror brought in a document addressing that issue and did not recognize the document at issue.  Id., at 31-32.  Juror Charland recalled that for awhile, everyone was "kind of hung up" on what reasonable doubt meant; he did not remember how the issue was resolved but recalled that they got over it and thought he recognized something similar to the document in question being present in the jury room during deliberations.  Id., at 34-37, 42.  Juror Charland also stated that he did not think that the document really helped much, as jurors still had questions after reading it and continued to talk about it for quite awhile because it didn't really answer the question, and that it didn't have an impact on their decision or why jurors did not deliberate very long on the second day . Id., at 42, 47-48.

Juror Yates thinks that there was a discussion as to what each juror understood "beyond a reasonable doubt" to mean but does not recall seeing any document like the one in question to resolve this question.  Id., at 52-54.  According to Juror Kline, she did not remember reasonable doubt being a concern during deliberations, having seen the document in question, or any juror advising the group that he or she had a definition of the term.  Id., at 56-58.  Juror Waibel remembers three or four jurors discussing what

reasonable doubt meant but was not part of the discussion herself because she was confident as to what it meant and did not recall seeing anything like the document in question during the deliberations. Id., at 61-63.  Juror Paine did not believe that the definition of proof beyond a reasonable doubt was ever an issue of discussion or a problem for the jury and did not ever see the document in question or anything like it in the jury room during deliberations.  Id., at 64-66.  Juror Leman testified that she recalled the question of what is a reasonable doubt being thrown out there but doesn't recall them resolving the question as a group or having seen any document like the one in question. Id., at 69-71.  Finally, Juror Lockenhour, the jury foreperson, stated that he recognized the document in question and that although he did not recall bringing it into the deliberations, it was possible that he did; he recalled reading parts of it to the jury and discussing what reasonable doubt was, but does not recall whether they discussed reasonable doubt after he read parts of the document out loud.  (Transcript of 10/18/07 Evidentiary Hearing at 7-14) There may have been very little discussion about reasonable doubt afterwards, but if so, "it was more to reconfirm what reasonable doubt was" and "[n]ot to question it more." Id., at  26.

The testimony from the evidentiary hearing shows that the vast majority of the jurors had no recollection of the document being present in the jury room.  Only four of the jurors recalled having seen the document or one similar to it during the deliberations. While many of the jurors recall the concept of reasonable doubt being discussed, this is not surprising, as it was made clear to the jurors by the court that the issue for them to decide was whether Ritchie had been proven guilty beyond a reasonable doubt.  The strongest statement on this issue came from Juror Charland, who said that they were "kind

of hung up" on the question of reasonable doubt for awhile.  However, he testified that they got over it and that he did not think that the document helped very much or had an impact on their decision.

Assuming that the document was known to and considered by the jurors, Supreme Court caselaw compels the conclusion that the language used in the document, when taken in context, would not have undermined impartiality or led a reasonable jury to convict on a lesser showing than that required by Due Process.  Even when considered in conjunction with the testimony of the jurors, Ritchie has not shown that he was prejudiced by the consideration of the document during deliberations, as the testimony does not establish that the document had a substantial or injurious effect on the verdict as required under <u>Brecht</u>. The same factual conclusion was reached by the state courts after observing the jurors' demeanor and considering the testimony produced during the evidentiary hearing before concluding that the jurors' exposure did not impact their verdict.  This finding is entitled to deference absent clear and convincing evidence in rebuttal that has not been presented in this case, rendering his claim that the Illinois courts' decision amounted to an unreasonable application of Supreme Court precedent unavailing as well.

## II.    **Admission of Evidence of Phone Call**

Ritchie next asserts that it was error for the trial court to admit evidence that he had expressed a desire to have sex with his wife during a phone call earlier on the night of the incident.  In order for a claim to be addressed in a § 2254 proceeding, a petitioner must first establish that he has fully and fairly presented his claim to the state courts by giving them a meaningful opportunity to consider the substance of any such claims.  <u>Harris v. McAdory</u>,

334 F.3d 665, 668 (7th Cir. 2003), *citing* Chambers v. McCaughtry, 264 F.3d 732, 737 (7th Cir. 2001).

Here, the record reveals that although he presented a claim regarding the admission of the telephone conversation to the state courts, the claim was presented as a state law evidentiary claim rather than a federal due process claim.  Specifically, Ritchie argued that the evidence was inadmissible because it was grounded in the confidential nature of the marital relationship, irrelevant, and prejudical.  He relied solely on state evidentiary law, citing no relevant federal cases or state cases applying constitutional law to similar factual scenarios, and made no attempt to allege the customary factual assertions that indicate claims of constitutional dimensions.  Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004) (finding that "[p]resenting the 'same claim' in state court that he later seeks to make in federal court means that the petitioner must alert the state courts that he is relying on a provision of the federal constitution for relief.")  Thus, the Court concludes that no claim that the trial court violated his due process rights on this basis was ever presented to the state courts at any time, and he has therefore procedurally defaulted this claim.  Rodriguez v. Peters, 63 F.3d 546, 555 (7th Cir. 1995).[3]

Procedurally defaulted claims can be reviewed by a federal court only upon a showing of cause and prejudice or a fundamental miscarriage of justice.  Wainwright v. Sykes, 433 U.S. 72, 87 (1977).  To establish cause, a petitioner must show that some external impediment prevented him from asserting his federal claim in state court.  Murray

---

[3] The Court further notes that as a state evidentiary claim, Ritchie's claim would not be cognizable in this federal habeas corpus proceeding.  Robertson v. Hanks, 140 F.3d 707, 712 (7th Cir. 1998).

v. Carrier, 477 U.S. 478, 488 (1986).  Prejudice can be established where a petitioner can show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension."  United States v. Frady, 456 U.S. 152, 170 (1982).

Here, while Ritchie makes rambling reference to the evidence having been both irrelevant and prejudicial, he makes no real attempt to demonstrate cause for failing to raise the claim as a denial of federal constitutional rights in the state courts and argues that his claim should be preserved.  He had different counsel at trial and on direct appeal and makes no effort to demonstrate some external impediment to asserting his claim in its present form.  Although he makes a passing reference in the end of his traverse to any procedural default being due to errors of counsel, he never made any claim of ineffective assistance in the state courts, or before this Court for that matter.  Even assuming that he could demonstrate cause, Ritchie has also failed to demonstrate that he has suffered actual prejudice.

Nor does Ritchie make any attempt to invoke the fundamental miscarriage of justice exception.   To properly invoke the narrow fundamental miscarriage of justice exception, allegations of constitutional error must be supported by new, reliable evidence that was not presented at trial.   Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 865 (1995).  A petitioner must then show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Id. at 867-68; Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003).  Ritchie makes no showing that he is actually innocent of the charges against him and presents no new, reliable evidence which was not presented at trial.   He has

therefore failed to excuse his procedural default of this claim, and it is now barred from further consideration in this Court.

### III.   Prosecutorial Misconduct

Finally, Ritchie argues that he was denied a fair trial as a result of prosecutorial misconduct based on comments by the prosecutor during opening statements and closing arguments.  Specifically, he challenges: (1)  a misstatement of the law by the prosecutor suggesting that the state needed to prove only one element to convict him when there were two; (2) the characterization of the victim and her brother as "afraid" of the court system; (3) the assertion that the assault was "forever burned" into the memory of the victim and that she had become numb to protect herself; (4) the suggestion that his desire for sex with his wife who had just given birth five days earlier demonstrated an insensitivity to her condition; and (5) unspecified comments disparaging his defense counsel by insinuating that counsel was trying to "trick the jury into an acquittal."

With respect to the first alleged error, the Illinois Appellate Court found that while the prosecutor's statement that "[I]f we have proven the sexual penetration, we have proven that [the victim] was unable to give knowing consent to this act and [defendant] knew it" could have confused the jury as to the elements of the crime, any confusion was corrected by providing the jury with the proper elements instruction as set forth in IPI Criminal 4th No. 11.56.  It is well-settled that misstatements about the applicable legal standard, even if improper, doe not warrant relief unless "the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Ruvalcaba v. Chandler, 416 F.3d 555, 565 (7th Cir. 2005), *citing* Darden v. Wainright, 477 U.S. 168, 181 (1986) (determining whether defendant was prejudiced by comments involves consideration of

whether evidence was misstated, whether remarks implicate the defendant's specific rights, whether the defense invited the response, the trial court's jury instructions, the weight of the evidence against the defendant, and the defendant's opportunity to rebut the comments.) Where jury instructions correctly reflect the elements and burdens of proof for the charged offense, it is assumed that the jury followed the court's instructions and that the instructions sufficiently cured any error in the prosecutor's comments.  Id., at 566, *citing* Bae v. Peters, 950 F.2d 469, 481 (7th Cir. 1991).

In addressing the purportedly disparaging comments about defense counsel, the Illinois Appellate Court noted that comments suggesting trickery or deception by defense counsel are improper, but found that any impropriety may be cured if the trial judge sustains an objection and gives a prompt admonition to the jury to disregard the comments and focus solely on the evidence.  People v. Ritchie, Order at 15-16, No. 3-05-0879 (Ill.App.3rd Dist. June 16, 2008), *citing* People v. Emerson, 97 Ill.2d 487, 497 (Ill. 1983); People v. Brown, 232 Ill.App.3d 885, 901 (1992).  The Appellate Court found that in addition to immediate admonishments to the prosecutor to limit his arguments to the evidence and reasonable inferences and also to the jury to confine their consideration to the evidence and reasonable inferences, the jurors received the instruction from IPI Criminal 4th No. 1.03, which advised that any statement or comment made by counsel that was not based on the evidence must be disregarded.  In combination, the admonishments and instruction were held to be sufficient to adequately dispel any potential prejudice to Ritchie that resulted from the comments.

The remaining comments claimed to be prejudicial were reviewed within the context of the prosecutor's entire opening statement and closing argument to determine whether

the comments rose to an actionable level either individually or cumulatively.  Considered in this context, the comments about the victim's fear of the court system, having the incident "forever burned" into her memory, and protecting herself by going numb, as well as his request for sex from his wife earlier in the night were not found to be a significant departure from the outer limits of legitimate prosecutorial commentary.  Furthermore, defense counsel did not object to any of these comments, and the Appellate Court concluded that the evidence was not so closely balanced that the comments could have affected the fundamental fairness of the trial.

Ritchie's traverse amounts to little more than bald disagreement with the state courts' rulings.  He makes no attempt to demonstrate that the decision was either contrary to or an unreasonable application of Supreme Court precedent or that it was based on an unreasonable determination of the facts in light of the evidence presented at trial.  While the Appellate Court did not expressly cite the requirements of Darden, its analysis reveals that it applied the correct legal standard, considering whether there was a misstatement, the trial court's instructions, the weight of the evidence, and the opportunity to object or rebut the comments.  The Court therefore finds that the state courts' determination that the comments in question did not so infect the trial with unfairness as to make the conviction a denial of due process was not unreasonable, and Ritchie is not entitled to relief on this claim.

## CONCLUSION

For the reasons set forth herein, Ritchie's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [#1] is DENIED.  This matter is now terminated.

ENTERED this 14th day of April, 2010.


_____
s/ Michael M. Mihm
Michael M. Mihm
United States District Judge